NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ALAN CLARK,                                                   Civil Action No. 10-4470 (JLL)

        Plaintiff,                                              **OPINION**

v.

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

**LINARES,** District Judge.

    Presently before this Court is Plaintiff Alan Clark's (the "Claimant") appeal seeking review of the Administrative Law Judge's ("ALJ") decision denying his application for disability benefits pursuant to §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. This Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court affirms in part but remands for the ALJ to consider the severity of a combination of Claimant's impairments and any medical equivalence of his impairments with the listings.

**PROCEDURAL HISTORY**

    On February 9, 2006, Claimant applied for disability insurance benefits alleging disability beginning December 12, 2005. The Social Security Administration ("SSA") denied his claim on June 12, 2006 and upon reconsideration on May 8, 2007. Claimant requested a hearing by an ALJ pursuant to 20 C.F.R. § 404.929. On November 14, 2008, a hearing was held in New York, N.Y. where Claimant testified. On November 20, 2008, the ALJ found Claimant not

disabled. The Appeals Council denied Claimant's request for review on July 29, 2010. On September 1, 2010, Claimant filed a complaint in this Court appealing the ALJ's decision. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## **FACTS**

At the time of the hearing, Claimant was forty-nine years old and a high school graduate. (R. 27-28). He worked as a roofer from 1977 to 1995. (R. 28, 98). In 1988, he fell off a ladder while working, which caused him to undergo a vasectomy and surgery in 1996. (R. 28-29, 165). He could no longer work as a roofer and started collecting disability benefits. (R. 28). In 2001, he achieved a Bachelor of Science in electrical engineering technology. (R. 29).

From 2001 to 2002, Claimant worked as a technical writer with NBS Card Technology in Paramus, NJ. (R. 29, 40). This job consisted primarily of computer work, and he did not need to lift anything heavier than a camera. (R. 40-41).

In 2003, Claimant began employment at Patterson Public School System. (R. 29). There, he was the PC Technician responsible for running and operating the school system's telecommunications system. (R. 30). For this job, he had to lift and carry a ladder up the school stairs. (R. 30). The job also involved sitting and bending. (R. 30).

On March 28, 2005, a 150-pound cabinet fell off a wall and onto Claimant's body while he was working. (R. 30). Claimant last worked for the Patterson Public School System on December 12, 2005. (R. 42).

On December 13, 2005, Claimant had surgery performed by Dr. Steinberger. (R. 189-202). Dr. Steinberger diagnosed Claimant with spinal and lumbar stenosis, spinal disk herniation, and discogenic disease. (R. 190, 283, 292). Dr. Steinberger dissected scar tissue from nerve roots and removed several herniated discs. (R. 191). Since that operation, Dr. Steinberger

followed up with Claimant, who continued to feel pain and stiffness in his movement (R. 281-3). An MRI on Claimant's lumbar spine showed degenerative disc disease and spinal stenosis. (R. 281-2). On October 11, 2006, Dr. Steinberger noted that Claimant continued to experience low back, neck, and shoulder pain. (R. 273). Dr. Steinberger concluded that Claimant was a candidate for surgery. (R. 272-3).

Claimant had another surgery on January 22, 2008. (R. 348). Dr. Steinberger again diagnosed stenosis and discogenic disease. (R. 348). On April 23, 2008, Dr. Steinberger noted that Claimant still suffered from chronic pain and limitations on activity. (R. 331). An MRI performed on August 15, 2008 showed disc herniation in the upper thoracic spine. (R. 340). On September 26, 2008, Dr. Steinberger noted that Claimant was no longer able to perform his job duties because he still experienced "<u>severe</u> persistent pain in [his] <u>entire</u> spine." (R. 361) (emphasis in original).

Claimant underwent physical therapy at the Kessler Institute for Rehabilitation from January to June 2006. (R. 252-6). His physical therapist noted that Claimant still suffered pain in L-5 and had difficulty walking up and down stairs as well as bending or lifting. (R. 252). As of June 14, 2006, Claimant still suffered pain registering an eight out of ten. (R. 252). The physical therapist remarked that Claimant's pain continued to limit his functional activities. (R. 252).

On May 8, 2006, Dr. Vassallo, an orthopedist, examined Claimant in connection with his disability application. (R. 214-8). Dr. Vassallo noted limitation in range of motion at the cervical and lumbar spines. (R. 217-8). Dr. Vassallo opined that Claimant could not "sit, stand or walk for prolonged periods of time." (R. 215-6). Nonetheless, Dr. Vassallo found no muscle weakness in the left or right extremities. (R. 218).

On April 26, 2007, Dr. Klingbeil performed similar motion testing on Claimant and

3

found reduced lumbar spine lateral and extension flexion. (R. 260). Dr. Klingbeil also found no muscle weakness in the left and right extremities. (R. 260). At the time of the hearing, Claimant continued to experience pain across his body, and limited ability to stand, sit, bend, or walk for long periods of time. (R. 34-35).

For his disability application, Claimant underwent a consultative psychiatric examination by Dr. Miskin on May 23, 2006. (R. 227-30). Dr. Miskin found Claimant mildly frustrated and melancholic but otherwise without any suicidal ideas. (R. 228). Claimant's cognitive functioning seemed normal, and he performed several basic tests. (R. 229). Dr. Miskin concluded that Claimant had a "fair ability to understand, carry out and remember instructions" and a "limited ability to respond appropriately to supervision, coworkers, and mild work pressures in a work setting." (R. 230). He diagnosed Claimant with moderately severe major depressive disorder. (R. 230).

On June 9, 2006, SSA psychologist Dr. Weitzman reviewed Dr. Miskin's consultative findings and found that Claimant did not meet any of the Mental Impairment Listings. (R. 234-46). Dr. Weitzman noted that although the depression was major, it did not affect Claimant's daily functioning. (R. 237, 244). Throughout that time, Claimant had not sought or used mental health treatment or medications. (R. 246).

On May 1, 2007, Claimant underwent a psychological examination by Dr. Jain. (R. 262-4). Dr. Jain reported restlessness and edginess in Claimant's mood. (R. 263). Nonetheless, Claimant performed various cognitive tests without difficulty in memory, attention, or concentration. (R. 263). Dr. Jain concluded that Claimant suffered depression symptoms because of his physical pain, but ruled out major depression disorder. (R. 264). Dr. Jain instead diagnosed Claimant with Adjustment Reaction with depression and anxiety. (R. 264).

At the time of the hearing, Claimant lived with his fiancée and her children. (R. 37). He spent much of his time taking care of his elderly mother, who lived across the street. (R. 37). He could drive. (R. 37). His social interactions were limited to his fiancée and children. (R. 38). Claimant generally got along well with others and authority, and enjoyed fishing. (R. 119-21). He also followed oral and written instructions well. (R. 128).

Also at the hearing, the ALJ pointed out that Claimant had received $8,694 in earnings from the Patterson Public Schools System in 2006. (R.42, 83). When asked what the earnings were for, Claimant was equivocal and suggested it was either carryover salary or workers' compensation. (R. 42-43).

Furthermore, Claimant opined that he still had the skills and training to work as a technical writer. (R. 41). Nonetheless, he believed that he could no longer sit for the time required by many employers. (R. 41).

## APPLICABLE LAW

Pursuant to the Social Security Act, a claimant must show that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." Social Security Act, 42 U.S.C. § 423(d)(1)(A) (2006). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A). Each claimant's disability is determined individually based on factors such as physical ability and work experience. Heckler v. Campbell, 461 U.S. 458, 461 n.1 (1983).

The SSA uses a five-step sequential process for evaluating a claimant's disability. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the SSA Commissioner at step five. Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000). Neither party bears the burden at step three. Id. at 263 n.2.

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity involves doing significant physical or mental activities, and usually for pay or profit. § 404.1572. If the claimant is engaged in substantial gainful activity, he is not disabled and the process ends. § 404.1520(b); Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step two, the claimant must show he suffers from a medically determinable and severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities; it is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. § 404.1521; SSR 85-28, 1985 WL 56856. If the claimant fails to show a severe impairment, then he is not disabled and the process ends. § 404.1520(a)(4)(ii).

At step three, the ALJ must determine based on the medical evidence whether the claimant's impairment matches or is equivalent to a listed impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1. § 404.1520(a)(4)(iii). If it matches or is equivalent, the claimant is disabled. § 404.1520(d). If it does not, the analysis proceeds to step four. Id. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

When the claimant does not suffer from a listed impairment or an equivalent, the analysis

proceeds to step four. The ALJ must determine the claimant's residual functional capacity, the physical and mental demands of the claimant's past relevant work, and whether the claimant has the capability to perform the past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); Burnett, 220 F.3d at 120. The SSA often classifies residual functional capacity and past work by physical exertion requirements from "sedentary" to "very heavy work." § 404.1567.

If the claimant lacks the residual functional capacity to perform his past relevant work, the analysis proceeds to step five. The SSA Commissioner must show that, based on the claimant's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner may use the Medical-Vocational Guidelines or grids, which consider factors such as age, physical ability, education, and work experience. § 404, Subpt. P, App. 2. However, reference to the grids alone is insufficient when the claimant suffers from non-exertional impairments[1]; the Commissioner must use a vocational expert or other similar evidence to establish that the claimant's non-exertional limitations do not diminish his ability to perform other jobs in the national economy. Sykes, 228 F.3d at 273; see Burnett, 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply applying the Grids . . ."). If the Commissioner cannot show there are other jobs for the claimant in the national economy, then the claimant is disabled. § 404.1520(g).

## STANDARD OF REVIEW

Determinations of disability or no disability by the ALJ are upheld if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of

---

[1] The SSA classifies impairments as exertional, those that affect a claimant's "ability to meet the strength demands of jobs" such as pushing and pulling, walking, and lifting, and non-exertional, which are all other limitations including environmental and postural limitations. 20 C.F.R. § 404.1569a.

evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Although this Court defers to the ALJ's findings of fact and may not substitute its conclusions for the ALJ's, this Court may scrutinize the record to determine whether the ALJ's determination is reasonable and supported by evidence. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992); see Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (suggesting courts have a duty to scrutinize the record to determine whether the conclusions are rational).

This Court may consider evidence including the objective medical facts, diagnoses and opinions of examining physicians, subjective evidence of pain and disability described by the claimant and corroborated by others, and factors such as age, education, and work history. Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). When there is conflicting medical evidence, the ALJ must adequately explain his reasons for rejecting competent evidence. See Brewsters v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986) (ALJ must explain in the record why he rejects the opinion of a treating physician that conflicts with that of a non-treating physician). Generally, medical opinions consistent with other evidence are given more weight whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. § 416.927.

## SUMMARY OF THE ALJ'S FINDINGS

At step one, the ALJ concluded that Claimant was engaging in substantial gainful activity for an indefinite period since the alleged onset date of December 12, 2005. (R. 15). The ALJ pointed to the $8694.35 compensation received by Claimant in 2006, which Claimant failed to explain to the ALJ's satisfaction. (R. 15).

At step two, the ALJ found that Claimant had several severe impairments: herniated

discs, status post spinal surgery, and status post myocardial infarction. (R. 16). However, the ALJ did not find Claimant's depression severe. (R. 16). The ALJ reached that conclusion through rejecting Dr. Miskin's conclusions in favor of Dr. Jain's. (R. 16).

At step three, the ALJ did not find any of Claimant's impairments matching or medically equivalent to any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16). For the listing 1.04, disorders of the spine, the ALJ rejected any match because Claimant "ha[d] no motor loss or spinal arachnoiditis, and [Claimant was] able to ambulate effectively." (R. 16).

At step four, the ALJ concluded that Claimant had the residual functional capacity to perform a full range of sedentary work, but he could not be exposed to hazards, or kneel, crawl, or climb ladders. (R. 16). The ALJ did not credit Claimant's statements about the intensity, persistence, and limiting effects of his medical symptoms because of doubts about Claimant's credibility. (R. 17-18). In evaluating whether Claimant could return to past work, the ALJ credited the opinion of Dr. Schachtel over that of Dr. Steinberger. (R. 18). The ALJ concluded that Claimant could perform his past relevant work of technical writer. (R. 18).

At step five, the ALJ found that given Claimant's age, education, and vocational background, he was not disabled pursuant to the Medical-Vocational Guidelines, especially grid rules 201.21 and 201.22. (R. 18.)

## ANALYSIS

**1. The ALJ Erroneously Concluded that Claimant Had Engaged in Substantial Gainful Activity After December 12, 2005.**

Claimant contends that the ALJ failed to calculate and compare his monthly earnings in 2006 with the SSA's threshold amount, and the ALJ improperly relied on his disability report

9

and hearing testimony to conclude that Claimant was working in 2006. Claimant argues that he was not engaged in substantial gainful activity after December 12, 2005.

The SSA does not object to Claimant's contentions here. Def.'s Br. 9. In 2006, Claimant earned $8,694.35. (R. 82-83). This constituted an average of $724.53 per month. The SSA's earnings threshold for substantial gainful activity in 2006 was $860.00. Program Operations Manual System DI 10501.015, 2001 WL 1931773. Because the ALJ failed to consider the fact that Claimant's monthly earnings were less than the SSA's earnings threshold in 2006, the ALJ's conclusion at step one is erroneous. Beeks v. Comm'r of Soc. Sec., 363 Fed. Appx. 897 (3d Cir. 2010) (ALJ's decision vacated when the step-one analysis failed to consider or mention the claimant's earnings after the alleged onset of disability was less than the average monthly allowance by the SSA); accord Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (if a claimant earned less than the SSA's prescribed amount, a presumption arises that he did not engage in substantial gainful activity). Because the ALJ did not solely rely on step one to reject Claimant's application, this Court now reviews the other steps.

**2.    The ALJ Properly Determined that Claimant's Depression Was Not Severe.**

Claimant objects to the ALJ's finding that Claimant's depression was not a severe impairment. Claimant bases this argument on four grounds: 1) the ALJ failed to follow the special technique outlined in 20 C.F.R. § 404.1520a; 2) the ALJ impermissibly substituted his lay opinion for the opinions of mental health specialists; 3) the ALJ did not properly weigh the medical opinion evidence; and 4) the ALJ based his conclusion on Claimant's failure to seek treatment. Neither party objects to the ALJ's finding that Claimant's herniated discs, status post spinal surgery, and status post myocardial infarction are severe impairments.

Claimant relies upon Newell v. Commissioner of Social Security and McCrea v.

Commissioner of Social Security for the proposition that step two should be a de minimis screening device and applied lightly in favor of the claimant. Pl.'s Br. 21-22. However, the standard of review is clear; substantial evidence applies at step two. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 361 (3d Cir. 2004); see Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (affirming that district courts cannot weigh the evidence or substitute their opinions for those of the fact-finder).

With those principles in mind, this Court analyzes whether the ALJ properly applied the second step of the SSA's sequential test to Claimant's depression. Under the SSA's regulations, an impairment or combination of impairments is severe if it "significantly limits the claimant's physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. Those abilities include "abilities and aptitudes to do most jobs [including] walking, standing, sitting . . . understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." Id. Therefore, severity is evaluated on both medical and functional aspects. Thorton v. Astrue, 356 F. App'x. 243, 248 (11th Cir. 2009) (severity of a claimant's mental disability must be measured in terms of its effect on the ability to work and not just in terms of medical abnormality); see generally Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (the Secretary permissibly adopted regulations incorporating functional aspects in evaluating severity).

Here, the ALJ relied on the medical opinion evidence and the specialists' functional findings to conclude that Claimant's depression was not severe. (R. 16). The ALJ cited Dr. Jain's conclusion that Claimant only had adjustment reaction with depression and anxiety, and no major depressive disorder. (R. 16). The ALJ discussed Dr. Miskin's opinion that Claimant had a

"limited ability to respond appropriately to supervision, coworkers and mild work pressures." (R. 16). The ALJ appropriately found that Dr. Miskin's opinion was not supported by evidence from his examination of Claimant, and nothing in the medical evidence indicated that Claimant lacked attention or concentration. (R. 16). Therefore, the ALJ rejected Dr. Miskin's opinion in favor of Dr. Jain's. Finally, the ALJ also noted that Claimant never alleged depression as an impairment and did not seek treatment, which strengthened the ALJ's conclusion. (R. 16).

Claimant's argument that the ALJ failed to abide by the special technique in § 404.1520a is unavailing. This Court agrees with Claimant that SSA regulations require the ALJ to follow the special technique. § 404.1520a(e); Plummer v. Apfel, 186 F.3d 422, 432 (3d Cir. 1999). Nonetheless, this Court finds that the ALJ followed the special technique. The ALJ reviewed and considered all treatment sources and reports, including those from Dr. Miskin and Dr. Jain. (R. 17). The ALJ also examined the Function Reports to determine what effects Claimant's impairments had on his functional abilities. (R. 17). In his decision, the ALJ discussed the medical findings and functional conclusions of Dr. Miskin and Dr. Jain, from which the ALJ determined that Claimant's depression was not severe. (R. 16). Moreover, state agency psychiatrist Dr. Weitzman reviewed the evidence and concurred that Claimant did not have severe depression and Claimant's functional limitations were unrelated to psychological and psychiatric factors. (R. 234-46). The ALJ considered and recorded those evaluations, as required by SSA regulation § 404.1520a(e)(4).

The ALJ did not impermissibly substitute his lay opinion for those of mental health specialists. The Third Circuit has cautioned administrative law judges not to substitute their lay opinions for those of medical experts. Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1981). Here, the ALJ did not rely on his lay

opinion to substitute his judgment for that of Dr. Miskin. The ALJ evaluated Dr. Jain's and Dr. Miskin's findings and conclusions, and chose to believe Dr. Jain over Dr. Miskin. (R. 16). The ALJ cited the reasons for rejecting Dr. Miskin's conclusions based on the ALJ's examination of the medical evidence and their incompatibility with Dr. Jain's conclusions. (R. 16). This Court fails to find that the ALJ incorporated his lay opinion in the evaluation.

This Court also disagrees with Claimant's assertion that the ALJ failed to properly weigh the medical evidence. SSA regulations require the ALJ to consider all medical opinions in the record along with other medical evidence. § 404.1527(b). Here, the ALJ considered and weighed the statements of all examining and treating sources, as well as medical treatment reports and exhibits in the record. (R. 17). The ALJ determined from the evidence that Dr. Miskin's conclusions about the functional limitations of Claimant's depression were unsupported and inconsistent with Dr. Jain's observations and other medical evidence. (R. 16). Claimant argues that the differences between Dr. Miskin's and Dr. Jain's findings are technical and a matter of degree. Pl.'s Br. 30-31. This Court is not competent to make such factual distinctions, and finding there is substantial evidence supporting the ALJ's distinction, this Court defers to the ALJ's findings. Williams v. Sullivan, 970 F.2d at 1182.

Finally, the ALJ's consideration of Claimant's failure to secure treatment for depression is harmless error. The Third Circuit has adopted the doctrine of harmless error and it pertains here. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (error is harmless when it does not affect the outcome, especially when the ALJ's determination is supported by other evidence). SSR 96-7 prohibits the ALJ from drawing inferences from a failure to seek treatment without first considering explanations the claimant may provide. SSR 96-7, 1996 WL 374186 at *7 (emphasis added). Here, the ALJ questioned Claimant twice during the hearing and assessed

13

Claimant's credibility, which the ALJ was entitled to do pursuant to SSR 96-7. (R. 38, 40). Meanwhile, the ALJ relied extensively on Dr. Jain's opinion, as well as other medical evidence, to reach his conclusion. (R. 16-17). Altogether, it was reasonable for the ALJ to conclude based on all the evidence that Claimant did not suffer from severe depression. See also Shidler v. Bowen, 651 F. Supp. 1291, 1298 (N.D. Ind. 1987) (reasonable for an ALJ to consider the failure to seek treatment to corroborate his determination of no disabling mental condition when he also considered other evidence, including mental health professionals' reports).

    3.    **The ALJ Failed to Consider Whether Claimant's Mental Impairments Combined with His Physical Impairments Were Severe**.

This Court holds that the ALJ failed to consider whether the combined effect of Claimant's mental impairments and his physical impairments was medically severe. The 1984 amendment to the Social Security Act requires the SSA to consider the combined effect of all the claimant's impairments in determining severity, regardless of whether any individual impairment is severe or not. 42 U.S.C. § 423(d)(2)(B). The SSA must determine whether a combination of impairments would be severe enough to affect an individual's ability to function. SSR 85-28, 1985 WL 56856 at *4; § 404.1523. When a claimant suffers from both physical and mental impairments, the SSA must consider them together in determining severity. Burrow v. Barnhart, 224 F. App'x. 613, 615 (9th Cir. 2007).

Here, the record shows and the parties do not dispute that Claimant had some impairment because of his mental condition. (R. 16). Even though the depression was found not severe, if combined with other non-severe impairments, such as Claimant's hypercholesterolemia and peptic ulcers, as well as his severe impairments of herniated discs, etc., it might have constituted a medically determinable severe impairment under step two. In fact, the medical evidence

14

suggests some connection between Claimant's physical impairments and his depression. (R. 228, 246, 264). Because the ALJ failed to address the severity of a combination of impairments, this Court must remand the case for the ALJ to make a proper determination.

>   4. The ALJ Was Correct in Finding that Claimant's Impairments Did Not Meet any Listed Impairment in 20 C.F.R. 404, Subpart P, Appendix 1, but Failed to Consider Whether the Impairments Medically Equaled any Listing.

Claimant argues that the medical evidence establishes that his impairments meet Listing 1.04A. The listing provides for:

> **1.04 *Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

The ALJ must determine whether the claimant's impairments or combination of impairments met one of the Listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairments do not precisely match, the ALJ must determine whether they are medically equivalent to a listing. § 404.1526. The Third Circuit requires the ALJ to explain his reasoning and determination adequately. Burnett, 220 F.3d at 120; accord Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing"); but see Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ does not have to use particular language or format in describing his conclusion).

Here, the ALJ concluded that Claimant's impairments did not meet or medically equal

any of the listed impairments, including 1.04 disorders of the spine. (R.16). The ALJ specified that Claimant did not meet listing 1.04 because "[Claimant had] no motor loss . . . ." (R. 16). The ALJ offers no additional statements on how he arrived at his conclusion or evaluated the medical evidence. (R. 16).

This Court's examination of the record finds substantial evidence supporting the ALJ's conclusion that Listing 1.04A was not met. Motor loss (atrophy with associated muscle weakness or muscle weakness) is an element of Listing 1.04A that the claimant must satisfy. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (to match a Listing impairment, a claimant must satisfy all of the specified medical criteria); Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability: Law and Procedure in Federal Court § 5:61 (2011). Dr. Vassallo's orthopedic examination of Claimant on May 8, 2006 found no muscle weakness in both the right and left extremities. (R. 218). Dr. Klingbeil's examination on April 26, 2007 corroborated that finding. (R. 260). Furthermore, Dr. Klingbeil's physical examination showed "no musculature atrophy [and Claimant] appears to be 5 out of 5 in the lower extremities. Sensation is intact . . . ." (R. 258). Functional examinations showed Claimant fully able to extend his hands and ascend and descend the examination table. (R. 258). Although Claimant could not toe or heel walk, that limitation was unrelated to muscle weakness and therefore did not constitute motor loss under Listing 1.04A. (R. 258, 260). Given the substantial evidence in support of no motor loss, this Court must affirm the ALJ's conclusion of no matching impairment to Listing 1.04A.

This Court must remand the case for the ALJ to determine whether Claimant's impairments medically equaled any of the Listings, particularly 1.04A. SSA regulations provide for assessment of medical equivalence when a claimant's impairments do not satisfy all the specific criteria of the Listings. § 404.1526(b). To be  medically equivalent, an impairment or a

16

combination of impairments must be at least equal in severity and duration to a listed impairment. Id. The ALJ must adequately explain findings on equivalence. McCarthy v. Comm'r of Soc. Sec., 1999 U.S. Dist. LEXIS 7551 at *37 (D.N.J. 1999) (citing Marcia v. Sullivan, 900 F.2d 172 (9th Cir. 1990)) (emphasis added).

Here, the ALJ only stated his conclusion that Claimant's impairments or a combination of impairments did not medically equal any of the listed impairments. (R. 16). Although the ALJ explained why the Listings were not met, he did not explain or discuss medical equivalence. (R. 16). The record provides evidence that Claimant might have a medically equivalent impairment or combination of impairments to Listing 1.04A: Dr. Steinberger diagnosed him with spinal stenosis and degenerative disc disease; Claimant had surgery on his nerve roots; physical therapy showed extensive pain along Claimant's spine and body; orthopedic tests showed limitations in spinal motion, positive straight-leg raising tests, and sensory and reflex loss. (R. 191, 218, 252, 260, 273, 348). Although Claimant showed no muscle weakness, he had difficulty lifting or carrying more than ten pounds, or walking on his toes or heels or squatting. (R. 220, 258). Because there is competent evidence from which one can conclude Claimant's impairments were medically equivalent to Listing 1.04A, this Court will remand for the ALJ to consider the evidence and make a determination.

## CONCLUSION

The ALJ erred in finding substantial gainful activity by Claimant after onset of disability, failing to consider the severity of a combination of impairments, and failing to explain any medical equivalence of Claimant's impairments to the listings. However, the ALJ's determination that Claimant's depression was not severe and Claimant's impairments did not match Listing 1.04 was supported by substantial evidence . This Court affirms in part and and

remands for further proceedings in accordance with this Opinion. An appropriate Order accompanies this Opinion.


DATED: August 5, 2011						s/ Jose L. Linares
								JOSE L. LINARES,
								UNITED STATES DISTRICT JUDGE